Good afternoon, Your Honors. Todd Burns on behalf of Mr. Watson. It seems appropriate for me to start with the Court's two recent orders related to this case, the one on April 22, 2013, effectively took the legs out from one of the arguments that I've raised as to why the district court erred in abandoning the Ilst Look-Through Rule. On the other hand, the more recent order, which points to Kennedy, Kennedy adds an argument back. So there's still really four arguments as to why the district court erred in abandoning Ilst. But I think Kennedy is also useful for the first step with respect to the alibi claim, and that, that, it plays into the argument as follows. Essentially, after Pinholster, the State took the position, although pretty much in one line, that the alibi claim should be assessed based on the State court record, and we agreed with that. We said it should be assessed based on the State court record, and Kennedy seems to be in line with that as far as the majority in Kennedy. And I'm a little reluctant to talk about what happened in Kennedy with Your Honor being the author, but it seems that the majority in Kennedy says, look, Pinholster says we look at the State court record, and that's what the Court did throughout, even to the end in deciding if relief was warranted. Moreover, Judge Kleinfeld began his dissent in Kennedy by saying, we are agreed that the record upon which the writ may or may not be granted is the record that was before the highest court of the State to have ruled on the issue, not the additional materials that were before the Federal district court. And so if we're just looking at the State court record with respect to Mr. Watson's alibi claim, Judge Benitez clearly held Mr. Watson stated a prime officia claim for relief, and that he satisfied D-2, which is an AEDPA standard for granting the writ, in that the State court denied relief based on an unreasonable determination of fact.  Sotomayor, let me just tell you the one area that is of concern to me so that you can address it. And that has to do with, regardless of what decision we're looking at and what pieces of the record we're looking at, where is the prejudice? Now, I know on its face, one would say, oh, gee, an alibi must be a prejudice important, but at trial, there was evidence that Petitioner was present at the crime. Davis and Tay, I'm not sure if that's how you pronounce his name, both said they were present when your client killed the victim. And there was some circumstantial evidence, such as the newspaper article found under his mattress and things of that sort. So why is there prejudice? Well, you know, I have to be careful in answering the question not to sort of bleed into also the things that are raised as far as the cumulative claim. I'll try at this point just to focus on the alibi claim. Davis and Tay, Davis was a 14-year-old young lady, Tay was 18. There were numerous inconsistencies in their statements. They testified under grants of immunity from murder prosecutions. And I think Judge Benito has nicely summarized the State's case. There's no forensic evidence, there's no fingerprints, there's no blood, there's nothing, there's just the testimony of these two women. And so when you're weighing that against what was excluded, which is an alibi, it seems to me that you have to say, well, there's a reasonable probability that if a jury is presented with this, that they could come to a different result. It seems to me, when you look, if you look at the alibi cases and prejudice, they uniformly go one direction, and that's that there is prejudice. If the jury is not presented with that sort of evidence, it's compelling. And, you know, I know that Judge Battaglia, in his prejudice analysis, characterized the State's case as strong, but I really think he over – he gave much too much weight to the State's case. The State's case was basically these two's witnesses, and their testimony was inconsistent in numerous respects, I mean, on top of the fact that they are being granted  So I think that's a good point. Explain to me, explain to me as completely as you can, the theory of the alibi. The theory of the alibi was that Mr. Watson had traveled to – from Oceanside down to Lemon Grove, which is near San Diego, with his friend, Mr. Morgan. On the way, they stopped at Bobby Douglas' apartment to see her. Then they went to this party in Lemon Grove. Mr. Watson spent the night in Lemon Grove with Paula White, and then all the events occurred over that – the course of that preceding evening and that night. So when we remanded the case the last time, we were down to, I think, just two potential alibi witnesses. Is that correct? I think that's correct. Douglas and LaRose were the subject of the Court's remand order. You know, somehow – Douglas and LaRose helped the alibi claim. Well, because Mr. Kolke had really sort of shifting positions in his pre-hearing declarations as to what he knew about the alibi. He initially, in a declaration, answered interrogatories that were submitted by Judge Meade and said, well, yeah, I knew about the alibi pre-trial, but I didn't follow up on White because she told me she was lying. That, of course, was inconsistent with what he had done in the Superior Court post-trial. He apparently realized that shortly before we had that evidentiary hearing, filed another set of answers to the interrogatories, took a different position. Oh, I didn't know about White until post-trial. And then we had the hearing, and his – and by the way, those interrogatories said, did you know about any other alibi witnesses? And he didn't identify anyone else he knew about. And then we had the hearing. I took materials from his file and said, look, your file shows that you knew about at least two other parts of this alibi. You knew about Douglas and you knew about LaRose. You haven't identified them previously. Your position has been shifting as to what you knew. You've essentially come in to Federal court and said you perjured yourself in State court. You know, but what we've got is the objective evidence is you knew about this alibi. You knew about two of these people you haven't told us about. You know, that's an interesting point, because your client's declaration mentions only Ms. White, I believe. If I'm – I don't know if I'm correct about that. But you're saying that even though his declaration says only that he mentioned White, that the other two were in the lawyer's notes? Is that? Well, I don't recall if Mr. Watson's petition – it was initially his petition in the court of appeals. He had a declaration. And then his declaration in the Supreme Court. I don't recall exactly who it mentions, but it's – the initial submission is all part of the same piece, the same alibi, which is Morgan – and he has a declaration from Morgan saying I took him to San Diego. He's got a declaration from White saying I was with him, and he's got a declaration from Yard saying in the midst of all this I had a conversation with White and Watson when they were at this party in Lemon Grove. Douglas and LaRose are additional pieces of that. LaRose, the party was at her house. And Douglas, they stopped at her place in San Diego on the way to the party. So – Well, the only two people mentioned in the declaration, at least, were Paula White, who's mentioned several times, and Charles Hamer or Hammer, I'm not sure how it's pronounced, who was mentioned a couple of times as well. But there's no mention of the others. His petition includes the declarations of the other – of Morgan and Yard as well. Okay. So I see what you're – So, you know, he's putting it together pro se. It's not – it's not a work of art, but he certainly puts out all those people there coming together to support the same alibi. Well, Yard mentions only Paula White also, I believe. That's right. I think Yard says she spoke on the phone to Paula White and Mr. Watson at about 1230 that night. Right, but doesn't mention LaRose or Douglas by name. No, that's correct. I don't believe Yard knew about them. I think what Watson was doing was presenting the people he could get declarations from and telling the part of the – the part of the alibi that dealt with them. But the point is, Kolke takes changing positions as to what he knows about and then comes into court and says, I didn't know about this pretrial, I didn't know about White, et cetera, I didn't know about any other witnesses, and then I pull from his file documents that show, indeed, he did know about Douglas and he did know about LaRose. I'm not sure where I should pick up now exactly, but – Well, I'm just – I'm not – I'm not sure – you know, Judge Graber – I was just – Judge Graber picked up where I was headed, which was that his declaration – his declaration that he submitted to the California Supreme Court only mentions White. But his petition mentions these other people and includes their declarations. So, you know, he's just dealing with – Yes, but what did he – what did he tell his lawyer before trial? He told his lawyer, I have this alibi. Now, the alibi is the whole thing, going to the party. And he obviously told his lawyer about Bobbie Douglas because she's mentioned in the lawyer's file. And he obviously told his lawyer about LaRose because she's mentioned in the lawyer's file. And the lawyer admits he was told about the alibi, but he claims, well, I didn't know about White until after the trial, which doesn't quite make sense. But that's been accepted already. That's – that's done after the first appeal. Well, and I guess all this is – was – we were – this was leading to was the prejudice argument that Judge Graber raised. And it seems to me – and Kennedy takes sort of the same approach here, and Pinholster talks about the same approach. I mean, it seems to me that Judge Graber's argument was, well, you weigh what wasn't presented as compared to the strength of the State's case. And again, Judge Benitez, I think, put it quite well. The State's case was based on these two women who gave – two girls, really, who were on drugs and were threatened with a murder prosecution who gave testimony that was extremely conflicted. Now, if countered by alibi testimony, it certainly seems that there's a reasonable possibility that the jury would come to a different result. Let me ask you another question with respect to the odd procedural posture here. You know, there was an evidentiary hearing, and I gather you're telling us on the one hand we should disregard everything that took place at that evidentiary hearing. Is that correct? Well, I think that there are two options. I think either, you know, the State's taken the position, and Kennedy and some of the other cases that have come out seem to kind of say, well, look, this issue was decided on the State court record. If that is so, then Judge Benitez's previous findings, control and relief, should be granted. If that's not so, if you can look beyond the State court record, then it seems to me we're back to where we were in 2006, much as it sort of breaks my heart to say that, but that then the hearing, the additional hearing with respect to Douglas and LaRose should be held, because those were the loose ends. This Court said, look, you know. Well, but wait a minute. If Pinholster, Pinholster may suggest that you got more than you deserved the last time around in the sense that maybe no evidentiary hearing was appropriate in the circumstances. So if we're limited to the State court record, what is the result of that? Doesn't the rest of it just wash out of the case? Well, I wouldn't characterize it as more than we deserve, because Judge Benitez didn't hold that hearing to benefit Mr. Watson. He held the hearing to benefit the State. Judge Benitez said, look, based on this record, it's all one-sided. It's all Watson's declaration, Yard's declaration, LaRose's declaration, or White's declaration. It's all one-sided that he told his attorney about this, and there's nothing saying his attorney did anything to respond to it. That's why Judge Benitez had the hearing to allow the State then to introduce evidence to beat back the prime official claim that had been made in the State court. So it's not as if Watson wanted that evidentiary hearing. Based on the State court record, Watson would win. And that's what Judge Benitez clearly hold. Now, Judge Battaglia, when he took it over, sort of, you know, gave a factual basis for why he disregarded Judge Benitez's prior holding and then recast the case, got rid of ills, got rid of the look-through rule, and sort of did everything all over again, which there was no cause from. I mean, there are numerous errors with respect to that. But there was no benefit to Watson to having the evidentiary hearing. It was all downside. Counsel, this is Judge Hawkins. I'm in Seattle. I hope you can see and hear me. I can, Your Honor. And forgive me, forgive me, I'm new to the case, but wasn't part of the evidence in this case involving this fellow James baby gangster Williams being brought into a motel room and stripped and beaten? Yes, it was. And was that before the jury? Yes, by the two witnesses, Davis and Tay. They were conflicted on a lot of stuff. And, of course, I don't want to preempt Your Honor's question. But, of course, in the cumulative ineffectiveness claim, we learned that there's a lot of stuff about Mr. Williams, including his prior statements, inconsistent statements and statements as to what did happen that don't make any sense. But, yes, at trial there was testimony from Davis and Tay. Mr. Williams didn't testify, even though he's supposedly the victim of four of the crimes, four of the five crimes. If, in fact, your client was present at the beating of James Williams, wouldn't that be inconsistent with the alibi? Yes, it would be. And, again, this is his position with respect to that. So there was a little bit more to this case than just these two young women being immunized and saying they were eyewitnesses to the murder. Well, but the only thing that puts Watson at the hotel room is the same two women. It's the same story, that he's at the hotel room, then he goes and commits the murder. And so it's them. The whole case is them. There are no fingerprints. There's no blood evidence. There's nothing else. And, you know, as again is made clear in the cumulative ineffectiveness claim, where they got these, you know, the two young ladies' stories is a lot like Mr. Williams' stories to the police, that, you know, there's never any testimony about that in front of the jury. But Mr. Williams initially at the scene of the crime, he's not beaten all bloody like he supposedly was. He's not missing his shirt. And he tells a story that doesn't implicate Mr. Watson at all. It's only until a few hours later that Mr. Watson — that Mr. Williams tells this story about how Mr. Watson beat him up, you know, and et cetera, et cetera, although he didn't say anything about wanting to find Mr. Atkins, the murder victim, and kill him. Mr. Williams tells a story that doesn't make any sense. He beat me up, et cetera, dropped me off on the other side of town. Then when he's supposedly bloody and shirtless, Mr. Williams hitchhikes to the hotel where the murder is and supposedly just gets there after the fact and lies to this situation, what he's seen, what happened previously. And then later, three hours later, tells a story implicating Mr. Watson. I mean, that's very suspicious. And then that becomes the template that the police have when they go and they testify — they go and question Davis and Tay. This is what Mr. Williams is telling us, that this is how it went down. Is that how it went down? Is that how it went down? I think you've answered my question. Thank you, counsel. Thank you. Your red light is on. We'll give you some rebuttal time because we asked a lot of questions, but we'll hear from the State. Good afternoon, Your Honors. Anthony DiSilva, Deputy Attorney General, for the Respondent. The district court correctly found, as to the newly or later exhausted claims, that they were procedurally barred and untimely. The question of Kennedy as to the remaining ineffective assistance on the alibi claim is the court took an approach that was akin to what was advocated by the dissent, but the majority has held that applying Richter in this situation is error. Richter would only be limited in situations, as was presented in Richter, where there is no reasoned decision by the State court. And this is what led to the original evidentiary hearing. So insofar as the district court applied Richter, that would be error. But I believe, as Judge Graber pointed out, we would then assess what would be, where there would be any prejudice, because that would suggest that evidentiary hearing, instead of an independent review of the record, was what would be appropriate. But in this case, the two remaining witnesses from this Court's original opinion Ms. LaRose and Ms. Douglas do not add anything more to the alibi that has already been presented by Mr. Watson. Ms. Douglas was the person whose home allegedly Morgan and Mr. Watson stopped at before going to the party that was hosted by Ms. LaRose. LaRose is mentioned only in Paula White's declaration as a person who threw the party. Insofar as they don't add anything more to the alibi, not having any further development is not prejudicial in this case. So unless the Court has any questions. They corroborate the alibi, don't they? They corroborate the alibi, yes, insofar as it would leave Mr. Watson. It's one thing to put up one witness and say this witness that I've had a relationship with for a long time and is the mother of my child. I was with her and nothing else than to have the person that allegedly drove him to the San Diego area, the house where this party took place, that they stopped on the way down there at another person's house, that once they were there, there was a telephone conversation with a fourth person that said, hey, we're in San Diego and my friend Watson is with me. That's more than just one person saying he was in another place at the time of the crime. Your Honor, it is. But when the alibi has been found to be weak and the linchpin of the alibi, Mr. Watson and Ms. White, have been found not to be credible, they do nothing more than support what is a weak alibi as was found by the district court. So in that respect, yes, Your Honor, they do corroborate that same alibi. But that alibi was found to be weak. Is it the State's position that notwithstanding pinholster, we should accept the findings, the evidentiary findings on remand? No, Your Honor. Your Honor, I believe pinholster still would apply to the analysis, but it would be considered maybe in any. Is it the State's position, excuse me, is it the State's position that we should ignore the factual findings from the evidentiary hearing on remand? I believe Kennedy would hold that that would be the case. Can you start with a yes or no? I'm sorry, Your Honor, yes. Yes, Your Honor. The answer is yes. So we should ignore the findings about the alibi being weak and that sort of thing. Yes, Your Honor. I believe pinholster would apply. But it sounds like you're also, and I'm not sure where this leads us procedurally, it sounds like what you're saying in part is that this is not a new claim in any way. It's the same old alibi claim and that because he knew all along about these witnesses, he should have raised this claim a long time ago initially. It's like additional evidence to support his same claim. Yes, Your Honor. And so where does that lead us in terms of the procedure or our standard of review or whether it's barred or it isn't barred? Well, it is barred. I mean, all along I think this alibi should have been raised as all the other claims should have been raised. And the way they were procedurally brought up is first in a motion for new trial where it was discussed that White was discovered after the trial. Then declarations were submitted not establishing the timeliness. And as in Kennedy, the timeliness for the telling of the attorney was established for the first time in the California Supreme Court, which led to a silent denial. So the procedural postures between this case and Kennedy are very, very similar. Counsel, when there was a motion for new trial after the jury returned its verdict, wasn't there? Yes, Your Honor, there was. And in that motion it was argued the basis for that motion was that Paula White was newly discovered, that the alibi had just been discovered after the trial. And there were affidavits or declarations in support of the motion? I believe the only affidavit was Paula White's. There was no affidavit from Christy Yard? There was a declaration from Christy. There was a declaration from Yard, and I believe that declaration was before the court of appeal, Your Honor. How about Derek Morgan? I don't recall if Morgan's declaration was initially before the California Supreme Court or at the court of appeal. How about Bobby Douglas? Bobby Douglas was not mentioned in any pleading in the state court. And LaRose was referenced in Paula White's declaration, Your Honor. But no separate declaration? There were no declarations. There's been no sworn testimony in the state courts by either Nisha LaRose or Bobby Douglas. Okay. Thank you. Thank you, Your Honor. I just want to make sure I understand the State's position here on Kennedy and Pinholster. So are you saying that under Kennedy, we look through to the court of appeals decision as supplemented by what was before the California Supreme Court? I think Kennedy would say you look at the evidence that was before the California Supreme Court. Well, we look through to the reasoned decision of the California Court of Appeal, correct? That is what Kennedy holds, yes, Your Honor. And we look at what was in front of the California Supreme Court as well. So we have the declaration of Mr. Watson. Yes, Your Honor. So we look at that to determine whether or not there was an unreasonable determination, right? Yes, Your Honor. That is what Kennedy holds. Okay. So just looking at the state court record, Judge Benitez said, well, there was an unreasonable determination of the facts because we now, because we, at the California Supreme Court, we had the declaration of Mr. Watson, which filled in the missing piece that was alluded to in the California Court of Appeal decision. Is that right? That is right, Your Honor. That's what established the timeliness that Mr. Watson first said that he told his attorney prior to trial about an alibi. Right. And so then Judge Benitez said it was an unreasonable determination of the facts, right? Correct, Your Honor. That at that point doesn't entitle my understanding of AEDPA and 2254 D1 and D2, even under D2 that doesn't establish an entitlement to habeas relief because you still have to go on and show a constitutional violation. That's correct, Your Honor. Right? Yes, you are correct, Your Honor. It only entitles a district court then to hold an evidentiary hearing. Right. So then that's how you get to the evidentiary hearing. Is that not right? I mean, we can then consider what took place at the evidentiary hearing. That is correct, Your Honor. That is correct. I know for that evidentiary hearing that Judge Benitez basically said he credited, he discredited Watson and White and he believed Kolke. Yes, Your Honor. He discredited White and Watson, thought that Watson's testimony was rehearsed. White's was not credible. I think mostly thought that Kolke was correct, although there were some inconsistencies in part because the evidentiary hearing was five years after trial. Okay. So then that, then we also learned at that evidentiary hearing about Watson and LaRose. Is that right? No. I mean, who was the one? Your Honor, if I may, it was Douglas and LaRose. Who surfaced at the evidentiary hearing. Yes. The names surfaced during the evidentiary hearing, and that's why I believe the Court wanted further factual development as to those two potential alibi witnesses. Well, I'm not, I guess I should know what we meant, but it's unclear to me whether we were sending it back because there had to be a further evidentiary hearing or just some explanation. I believe it would be possibly just some explanation or something in the record because that wasn't filled in. I mean, I think it was assumed it said further development of the facts as to those two witnesses, Your Honor. Right. So it's ambiguous at best. Well, the record can be supplemented other than through an evidentiary hearing. Yes, Your Honor, I believe it could be. Now, well, I don't have any further questions. Thank you, Your Honor. Unless the Court has any further questions, I'm ready to submit on my argument in the brief. Any more questions from my distant colleagues? None here. None here.  Thank you, Your Honor. Mr. Burns, you may have two minutes for rebuttal since we used a lot of it with questions. I'm going to try and go rapid fire. The Court's remand order said an evidentiary hearing with respect to Douglas and more fact findings with respect to LaRose. Judge Benitez did not find that there was a missing piece that was filled by Watson's declaration in the Supreme Court. Judge Benitez said Watson's sworn petition to the California court of appeal made clear that he told Kolke about the alibis. So there was no hole to fill. Watson was trying to fill one, but there was no hole there. And Judge Benitez found as much. And that's in numerous places in the record, including the excerpt at 26, 330, 479 to 80, and 1167. Now, the piece about LaRose and Douglas, if the Court is just looking at the State Court record, they're completely irrelevant, because they weren't a part of the State Court record. When they came into play is, Kolke came in and said, oh, I didn't know about this and I didn't know about that, and then I pulled from his file stuff that showed, well, sure enough, he knew about these two women and that they were a piece of the alibi, and he just denied that. So that's when they came out. That's when they became important. If we're just looking at the State Court record, they don't matter. If Kolke's allowed to come in and supplement the record for the State and claim, I didn't know about this, then it seems fair to be able to cross-examine him with his own file to show that he actually did know about the alibi. And as far as the alibi was found to be weak, well, Judge Bonita has never found the alibi to be weak. What he found is that Kolke didn't know about Paula White before trial. That was what Paula White said all along. She said, I learned about this after the trial. I contacted Kolke and said, hey, you know, here I am. You know, I'll submit a declaration. And so what Paula White said all along was where Kolke eventually ended up and what Judge Bonita has found. So to say he found her to be incredible is a little bit unfair. And he never found the alibi to be weak. He was going to bifurcate the prejudice and deal with the alibi later, which I don't think is appropriate. I think there's a balancing between what was submitted and what was not submitted. Sotomayor, is it your position that any time an alibi witness is offered, it's ineffective not to present them? Or are you just saying it's ineffective not to investigate them? I think there has to be an investigation so an attorney can make a reasonable decision not to present them. And if the lawyer finds them not credible or believes that a jury will find them to be lying, can the lawyer perform effectively by not presenting those witnesses? I think absolutely. That's a strategic decision that's, you know, almost impossible to topple unless it's just completely unreasonable. But it has to be a reasoned decision based on investigation. Thank you. I have one last question. What is this relief that you're asking now? Well, I think that there are one of two possibilities. One is that based on the State court record and Judge Benitez's findings, there should be relief granted based on the State court record. Even if the Court has to take a step beyond the D-2 analysis and say, well, does the State court record de novo establish a right to relief, I think it pretty clearly does. The State didn't really even argue to the contrary in its answering brief. The alternative is that we're back to where we were in 2006, which is, you know, the State was allowed to put on evidence from Kolke to repair the fact that it didn't have an adequate record from the State court record. Ion cross-examination showed that Kolke wasn't telling the complete story, either inadvertently or not. It surely is sensible to get to the bottom of that. I mean, if the State is allowed to put in stuff to destroy the claim, certainly I should be able to cross-examine Mr. Kolke with his own file to show that his statements as to what he knew and what he did are incredible. That was a long answer. The question was, what specific relief do you want? And I'm still not sure I know the answer to that. Well, obviously, reversal and remand, either with an order to conditionally grant relief, remand it to vacate the conviction and send it back to the State court, or that Judge Battaglia, the district court, be required to hold the hearing and make the additional findings that were ordered back in 2006. I think that that second thing, you know, possibly, maybe the appropriate thing to do would be to order that it go back to the State court, and the State court do what it should have done in the first place, which is when it was presented with a prima facie claim, have, you know, a hearing, adduce the appropriate evidence, and deal with the issue. I mean, I really think that that's the State's job, that for a Federal court to be having the hearing the State should have had in the first place is contrary to what's talked about in Richter and whatnot. But so I hope I've been clear there. Either, you know, vacate the conviction completely, or there's got to be some sort of hearing along the lines, hearing and additional findings along the lines of what the Court ordered in 2006. Thank you, counsel. Thank you. Thank you. We appreciate the arguments of both counsel. We especially appreciate your willingness to come here. At least we gave you some nice weather, and the case just argued is submitted.
judges: Hawkins, Graber, Paez